IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

STEVE RIDDICK,    )
        Plaintiff,    )    Case No. 7:20-cv-00559
                      )
v.    )    **MEMORANDUM OPINION**
                      )
C/O C. MICKLES,    )    By:   Hon. Thomas T. Cullen
*et al.*,    )    United States District Judge
        Defendants.    )

Plaintiff Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Riddick alleges that a correctional officer retaliated against him for filing grievances by bringing a false disciplinary charge and by instructing her subordinates to deny him recreation, showers, and telephone access.[1] He also alleges that other officials' actions deprived him of rights related to these events.

---

[1] This case is but one of *many* cases Riddick has brought against Red Onion personnel in this court. *See Riddick v. Franklin, et al.*, 7:20cv00081 (W.D. Va. Feb. 3, 2020); *Riddick v. Mullins, et al.*, 7:20cv00096 (W.D. Va. Feb. 10, 2020); *Riddick v. Trent, et al.*, 7:20cv00447 (Aug. 4, 2020); *Riddick v. Lambert, et al.*, 7:20cv00448 (W.D. Va. Aug. 4, 2020); *Riddick v. Mathena, et al.*, 7:20cv00449 (W.D. Va. Aug. 4, 2020); *Riddick v. Kiser, et al.*, 7:20cv00561 (Sept. 17, 2020); *Riddick v. Kegley, et al.*, 7:20cv00562 (W.D. Va. Sept. 17, 2020); *Riddick v. Kiser, et al.*, 7:20cv00580 (W.D. Va. Sept. 28, 2020); *Riddick v. Bunch, et al.*, 7:20cv00597 (W.D. Va. Oct. 6, 2020); *Riddick v. Gilbert, et al.*, 7:20cv00598 (W.D. Va. Oct. 6, 2020); *Riddick v. Collins, et al.*, 7:20cv00742 (W.D. Va. Dec. 11, 2020); *Riddick v. McCowan, et al.*, 7:21cv00138 (W.D. Va. Mar. 5, 2021); *Riddick v. Stanley, et al.*, 7:21cv00177 (W.D. Va. Mar. 26, 2021); *Riddick v. Kiser, et al.*, 7:21cv00178 (W.D. Va. Mar. 26, 2021); *Riddick v. Phillips, et al.*, 7:22cv00290 (W.D. Va. June 6, 2022); *Riddick v. Mullens, et al.*, 7:22cv00291 (W.D. Va. June 6, 2022); *Riddick v. Barton, et al.*, 7:22cv00297 (W.D. Va. June 9, 2022); *Riddick v. Clarke, et al.*, 7:22cv00304 (W.D. Va. June 13, 2022); *Riddick v. White, et al.*, 7:22cv00437 (W.D. Va. Aug. 1, 2022); *Riddick v. Mullens, et al.*, 7:23cv00011 (W.D. Va. Jan. 4, 2023); *Riddick v. King, et al.*, 7:23cv00012 (W.D. Va. Jan. 4, 2023); *Riddick v. Rose, et al.*, 7:23cv00072 (W.D. Va. Jan. 31, 2023).

This matter is before the court on a motion to dismiss filed by several defendants[2] and a summary judgment motion by other defendants.[3] In addition, Riddick has filed a response that he styled as a summary judgment motion. After careful review of the record, the court concludes that the defendants' motions must be granted, and that Riddick's motion must be denied.

## I.   BACKGROUND

At the time his claims arose, Riddick was incarcerated at Red Onion State Prison ("Red Onion"), a maximum-security prison operated by the Virginia Department of Corrections ("VDOC").[4] In Riddick's complaint, he alleges that he filed thee complaints in July 2020—one naming  Defendant L. Hall and two about officers that she supervised. Hall answered all three complaints and, on July 25, 2020, she returned them to Riddick. At that time, Riddick asked her for additional remedy forms, but he alleges that she refused his request. In response, Riddick apparently stated that he would add her as a defendant in one of his lawsuits, to which Hall allegedly responded, "I'm going to get you." (Am. Compl. pg. 2 [ECF No. 16].) Riddick claims that Hall then told the floor officers in the pod at the time (Mickles, C. Taylor, J. Boyd, and J. Gilbert) not to let Riddick out of his cell for anything. (*Id.* at 3.) Riddick adds that the floor officers then threatened him with bodily harm.

---

[2] Defendants Larry Collins, Shannon Fuller, Jeffrey Kiser, Penny McCowan, Larry Mullens, and T.L. Woods join in the motion to dismiss. (ECF No. 36.)

[3] Defendants J. Boyd, Larry Collins, J. Gilbert, L. Hall, Penny McGowan, C. Mickles, and C. Taylor join in the motion for summary judgment. (ECF No. 45.)

[4] Riddick is still housed at Red Onion at the time of this Opinion.

On July 25, 2020, Hall brought a disciplinary charge against Riddick for threatening bodily harm on July 25, 2020, claiming that Riddick had said that he would "get her ass." (*Id.*) Riddick denies that he made any such statement to Hall.

Hearing Officer Larry Mullens (referred to as Mullins throughout the defendants' pleadings) conducted a hearing on the threat charge on August 4, 2020. Riddick presented Hall's officer-response form and some grievance receipts showing that he had, in fact, previously complained about Hall, Taylor, and Mickles. Riddick contended that Hall was not truthful on two answers on the officer-response form and failed to answer another question. Riddick pointed out that Hall's separate incident report about the incident on July 25, 2020, stated that Riddick had threatened her staff, but did not indicate the nature and substance of the threats that he had made toward them; further, no staff member was presented as a witness at the disciplinary hearing.

Mullens found Riddick guilty of the threat charge and fined him $10. Warden Kiser upheld Mullens' finding, and Lt. Woods, the officer in charge, also signed off on the finding. Riddick claims that Mullens and Kiser were likely biased against him because they had previously been named as defendants in one of his other lawsuits. Finally, Riddick argues that the statement he reportedly made to Hall was not a threat of bodily harm and, thus, did not fit the charge that she wrote against him.

Allegedly in response to Hall's purported directive not to let Riddick out of his cell, Riddick claims that Officers Gilbert, Boyd, Taylor, and Mickles denied him showers, recreation, and telephone and kiosk privileges on multiple days in July, August, and September 2020. According to Riddick, officers normally blow a whistle and announce when they begin

taking the list of inmates who want showers or recreation that day. During the three months after Hall charged Riddick, he alleges that no one blew a whistle or announced when requests for showers and recreation were being taken. Riddick contends that officers often made the list while he was asleep and failed to wake him . (*Id.* at 12.) Riddick claims that he was denied recreation on July 26, 29, and 30; August 3, 4, 7, 8, 9, 12, 13, 17, 18, 21, 22, 23, 26, 27, and 31; and September 1, 4, 5, 6, 9, 10, and 14, 2020. (*Id.* at 6.) He claims that he was denied showers on July 30; August 4, 8, 13, 18, 22, and 27; and September 1, 5, and 10, 2020. (*Id.* at 9.) Riddick also alleges that he was denied telephone calls (normally offered on Mondays) on August 3, 17, and 31. (*Id.* at 9.)

Riddick alleges that as a mental health inmate diagnosed with "P.T.S.D., major anxiety disorder & major depressive disorder, [he is] more vulnerable to longer periods of time & stay [sic] in the cell." (*Id.* at 13.) After repeated denials of showers, recreation, kiosk and phone access, he "became depressed . . . and anxious." (Resp. & Mot. Summ. J. 23 [ECF No.52].) Riddick allegedly informed Assistant Warden Fuller, P. McCowan, and Unit Manager L. Collins that officers were denying him recreation, showers, and telephone and kiosk access, but that these supervisors did not intervene to prevent these violations from continuing and improperly addressed Riddick's grievances on the matter.

On October 12 and 26, 2020, Boyd allegedly refused Riddick's request to use a telephone. On the latter date, Riddick asked to call his attorney. Boyd allegedly replied, "I'm not giving you the phone so you can call your lawyer [and] file another lawsuit. F*** off." (Am. Compl. 14 [ECF No. 16].)

Liberally construing the amended complaint (ECF No. 16), Riddick asserts the following claims: (1) that on July 25, 2020, Hall filed a false charge against Riddick in retaliation for his complaints against her and her staff, in deliberate indifference to his health and in denial of his due process rights; (2) that Mullens found him guilty without properly considering all the evidence and to retaliate against Riddick because Mullens was named a defendant in Riddick's other lawsuit, in violation of his due process and First Amendment rights and based on deliberate indifference to the falsity of the charge; (3) that Woods and Kiser failed to correct procedural defects in the disciplinary proceedings, in violation of and with deliberate indifference to Riddick's due process rights, and that Kiser did so to retaliate against Riddick because Kiser was named as a defendant in a previous lawsuit; (4) that Taylor, Boyd, Mickles, and Gilbert denied Riddick recreation, showers, phone, and kiosk privileges in violation of and with deliberate indifferent to Riddick's due process rights and to retaliate against Riddick on behalf of Hall; (5) that Fuller, McCowan, and Collins as supervisors were made aware officers were denying Riddick showers and recreation, but did not intervene to stop the retaliation or deliberate indifference; (6) that Boyd denied Riddick two phone calls, including one intended for his lawyer on October 26, 2020, in retaliation for Riddick's past lawsuits and in violation of his right of access the court; (7) that Boyd, Taylor, Mickles, and Gilbert denied Riddick telephone usage in July, August, and September, in violation of his First and Fourteenth Amendment rights; and (8) that McCowan and Fuller improperly addressed Riddick's grievances or appeals about being denied showers, recreation, kiosk, and telephone, with deliberate indifference to and in violation of Riddick's due process rights.

The defendants have filed a motion to dismiss as to some claims and a motion for summary judgment as to others. Riddick has filed responses to the defendants' motions, one of which he also styles as a summary judgment motion. The motions have been fully briefed, and this matter is ripe for disposition.

## II.   MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))

### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[5] "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* "[O]nly a complaint that states a plausible claim

---

[5] The court has omitted internal quotation marks, alterations, footnotes, and/or citations here and throughout this Memorandum Opinion, unless otherwise noted.

for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

**B. Due Process**

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In other words, a plaintiff must identify a sufficient liberty or property interest at stake before the court examines whether the procedures attendant to deprivation of that interest were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A prison

inmate can typically demonstrate a protected liberty interest by showing an "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small fines routinely assessed at disciplinary hearings do not trigger federal due process protections. *See, e.g., Roscoe v. Mullins*, No. 7:18cv132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty was a $15 fine), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15cv140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15cv500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a property interest). *But see Bowling v. Clarke*, No. 7:19cv453, 2020 WL 4340944, at *5 (July 28, 2020) (denying summary judgment and noting that, "[a]rguably, however, the imposition of that fine, which was deducted from [the plaintiff's] inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected property interest without due process").

Here, Mullens found Riddick guilty of threatening bodily harm and fined him $10. Consistent with the persuasive authority cited above, the court concludes that Riddick's $10 fine was not an "atypical and significant hardship" that triggered constitutional due process

protections. *See Sandin*, 515 U.S. at 484. Because Riddick has failed to allege a protected liberty or property interest that was implicated by the actions of Mullens, Woods, and Kiser during the disciplinary hearing or disciplinary appeals, the alleged insufficiency of the process afforded to him in those proceedings did not violate any constitutionally protected right. *See Kentucky Dep't of Corr.*, 490 U.S. at 460. The court will grant these defendants' motion to dismiss as to Riddick's due process claims related to the disciplinary proceedings in Claims (2) and (3).

**C. Deliberate Indifference**

Riddick also asserts that Mullens, Woods, and Kiser were "deliberately indifferent" to compelling evidence of his innocence of the disciplinary charge. He apparently believes these defendants' actions or omissions violated his Eighth Amendment rights. Riddick is wrong as a matter of law.

To prove a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment regarding prison conditions, an inmate plaintiff must show that (1) objectively, he suffered a "sufficiently serious" deprivation and (2) subjectively, the defendant prison official had "a sufficiently culpable state of mind"; namely, "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the objective prong, the plaintiff must show that "a prison official's act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id.* To show deliberate indifference, the plaintiff must show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837.

Under this legal standard, Riddick's complaints about the disciplinary proceedings simply do not amount to plausible Eighth Amendment claims. A charge that resulted in a $10

fine simply did not deprive Riddick of any necessity of life. And by finding Riddick guilty of the offense and imposing or refusing to invalidate that fine, the defendants did not act with deliberate indifference to any "excessive risk to inmate health or safety." *Id.* The court will grant the defendants' motion to dismiss as to Riddick's claims alleging Eighth Amendment violations related to his disciplinary proceedings and fine.

## D. Retaliation

Finally, Riddick claims that Mullens and Kiser were potentially biased against him in the disciplinary proceedings because they were named as defendants in his previous lawsuits. Riddick's speculative allegations of retaliation or bias cannot suffice to state any actionable claim under § 1983. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Therefore, the court will grant the motion to dismiss as to the claims of retaliation against these defendants.

## E. Grievances

In Riddick's Claim (8), he contends that McCowan and Fuller did not properly address grievances or appeals that he filed about being denied showers and recreation, in violation of due process. This claim has no basis in law. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process" or an improper or incomplete grievance response. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Therefore, the court will grant the motion to dismiss as to Claim (8), regarding alleged mishandling of Riddick's grievances.

### III.   MOTION FOR SUMMARY JUDGMENT (FED. R. CIV. P. 56)

**A. Standard of Review**

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). To survive a summary judgment motion, nonmovants must present sufficient evidence that could carry the burden of proof of their claims or defenses at trial. *See id.* The nonmovants "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in their favor. *Anderson*, 477 U.S. at 248.

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*,

756 F.3d 307, 310 (4th Cir. 2014). A *pro se* litigant's verified complaint must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). But "unsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

The defendants argue that, as to the other claims in Riddick's amended complaint, they are entitled to summary judgment. In support of that assertion, they submit several affidavits and other documentation. (*See generally* Mem. Supp. Mot. Summ. J. [ECF Nos. 46, 51, 55].) Riddick has submitted responses to the defendants' motions, one of which he also titles as a summary judgment motion. (*See* Resp. & Mot. Summ. J. [ECF No. 52].) This motion, signed under penalty of perjury, and a separate affidavit (ECF No. 53) largely reiterate the allegations in his amended complaint.

## B. Defendants' Summary Judgment Evidence

In her affidavit, Hall states that on July 25, 2020, after a disagreement over complaint forms she had returned to Riddick at his cell, he said he would add her as a defendant in one of his lawsuits and stated, "I'm gonna get your ass." (Aff. of L. Hall ¶ 5, Jan. 26, 2022 [ECF No. 51].) She also claims that Riddick shouted threats toward her staff in the pod area. (*Id.*) Hall wrote a disciplinary charge against Riddick for "threatening bodily harm to any person, verbally, by gesture or actions." (*Id.*) She denies Riddick's claim that she verbally threatened to get him for filing complaints against her or her staff.

Inmates in Riddick's pod in July 2020 were offered the opportunity to shower at least three times per week and were offered recreation seven days per week. (*Id.* ¶ 6.) Hall states,

> Each morning on the scheduled shower and recreation days, an audible (whistle) or verbal warning is issued shortly after the 5:45 a.m. count. This is a formal count in which all offenders are required to be awake and standing. After the warning, an announcement is made that staff is coming through the housing unit for showers and recreation. Each inmate is asked if he wants a shower and/or recreation and a list is made of participating offenders. I also make an entry in the logbook when showers and recreation are offered.
>
> If the offender does not acknowledge or respond to staff, refusal is noted for that inmate. Security staff does not knock on offenders' doors to wake them or to get their attention. In my experience, inmates who want showers and recreation are already standing at the door to get on the list. Inmates are also afforded access to the kiosk after shower and recreation has [sic] concluded. Offenders in restrictive housing are not permitted to come out into the pod to use the kiosk whenever they want. The inmate is escorted to the secure chair and one officer stays with him while he uses the kiosk. . . . Phone calls are usually offered on the shower days during the night shift [and] during the day shift on Mondays.

(*Id.* at ¶¶ 7–8.) When an inmate is granted a phone call, an officer brings the phone to the inmate's cell for his use.

Hall asserts that she does not have the authority to order correctional officers under her command to leave an inmate in his cell, as Riddick alleges. And she denies that she ever gave any officer such an instruction about Riddick. (*Id.* ¶ 9.)

Boyd responds that the sergeant is the staff member who normally "go[es] to the inmates' cells during morning rounds and make[s] a list" of the inmates who request a shower or recreation. (Aff. of J. Boyd ¶ 4, Apr. 14, 2022 [ECF No. 55].) According to Boyd, "If Riddick was not provided a shower or recreation it was because he chose not to respond or refused when the list was being made." (*Id.*)

Later in the day, the correctional officers (like Boyd) would escort each inmate on those lists to the requested activity unless an inmate declines to go. Boyd states that, while he worked in Riddick's pod, Riddick "was given the same opportunity as other offenders to come out of his cell for showers and recreation and kiosk use, [but] he rarely came out of his cell." (*Id.*) Boyd states that correctional officers do not decide whether an inmate receives a shower, recreation, or telephone or kiosk access; these officers merely escort inmates to activities or bring the telephone, as directed by their supervisors.

According to Assistant Warden Fuller, logbooks indicate that between July 25 and September 2020, officers offered Riddick the chance to shower three times per week. He accepted a shower on July 25 and 28, August 1, 4, 6, 11, 20, 25, and 29, and September 3, 8, and 17. (Aff. of S. Fuller ¶ 4, Jan. 5, 2022 [ECF No. 46-2].) On at least two other dates during that time, Riddick requested a shower but declined to go when officers came to escort him. An inmate also has access to warm water, soap, a washcloth, and a towel in his cell to use for bathing, which Riddick doesn't dispute.

An inmate who chooses to participate in outside recreation will be escorted to an individual outdoor recreation area where he remains for a minimum of four hours. Inmates may also exercise inside their cells. Fuller states that he does not recall Riddick telling him of being denied showers, recreation, kiosk, or phone access. (*Id.* ¶ 6.) Fuller provided a Level I response to Riddick's regular grievance on that issue on October 12, 2020, and determined that evidence did not support the claim. (*See id.* Ex. B.)

Unit Manager L. Collins states that Hall does not have authority to direct officers to keep an inmate in his cell. (Aff. of Larry Collins ¶ 4, Dec. 29, 2021 [ECF No. 46-3].) Collins

asserts that he had "no knowledge or reason to believe that corrections officers were denying Riddick the opportunity to shower, participate in recreation and to use the phone and kiosk July through September of 2020." (*Id.*) Collins avers that during his daily rounds of the pod area, Riddick never told him that officers were refusing him these out-of-cell activities. (*Id.*)

An inmate's counselor will normally schedule him for phone calls with his attorney as needed. Riddick claims that Officer Boyd denied him use of a telephone on October 12 and again on October 26, 2020, for the stated reason that Boyd did not want to help Riddick file more lawsuits, but Collins denies having any knowledge of this. (*Id.* ¶ 5.) Telephone logs indicate that Riddick attempted calls to his legal contacts or attorneys on at least ten other days in October 2020. The logs also indicate that he completed several phone calls in July, August, and September 2020. (*See generally id.* Ex. A.)

## C. Due Process Claim against Hall

Riddick also alleges that Hall deprived him of due process by allegedly bringing a false disciplinary charge against him on July 25, 2020. For the same reasons discussed in granting other defendants' motion to dismiss on Riddick's process claims against them, the court will grant summary judgment for Hall. A $10 fine for a disciplinary infraction is not an "atypical and significant hardship" that triggers due process protections. *See Sandin*, 515 U.S. at 484; *Roscoe*, 2019 WL 4280057, at *3. Thus, even if Hall fabricated the statement for which she charged Riddick, her actions did not result in a deprivation of a federally protected liberty or property interest, and therefore simply does not give rise to a violation of the Due Process clause.

Riddick argues that the statement Hall accused him of making did not meet the definition of the charge because it did not specify any bodily harm that he intended to inflict on her. The record reflects that the hearing officer and reviewers of the disciplinary appeals found that the statement to which Hall testified *did* warrant the charge and the fine imposed. Even assuming, however, that Hall or other defendants ignored or violated VDOC disciplinary procedures in ruling or upholding the ruling that Riddick was guilty of a threat of bodily harm based on Hall's testimony, such violations of state procedural rules do not give rise to federal due process issues that would be actionable under § 1983. *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (finding that state official's alleged "failure to abide by [state] law is not a federal due process issue").

For all these reasons, Hall is entitled to summary judgment as a matter of law on Riddick's due process claims related to the disciplinary proceedings. The court will also deny Riddick's summary judgment as to his due process claims.[6]

## D. Retaliation

Riddick alleges that on July 25, 2020, Hall brought a disciplinary charge against him for threatening bodily harm by saying he would "get her ass." (Am. Compl. 2 [ECF No. 16].) Riddick claims that he "didn't make the alleged statement." (*Id.* at 3; Resp. [ECF No. 52].) He asserts that Hall fabricated the threat charge to retaliate against him for filing complaints about her and her staff and for threatening to name her in a lawsuit. Riddick also alleges that Hall

---

[6] Riddick tosses the phrase "due process" into several other paragraphs of his amended complaint. Merely handwaving at the Fourteenth Amendment does not present the necessary factual elements of a plausible due process claim. *Twombly*, 550 U.S. at 570 ("[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

ordered four officers under her command (Mickles, Boyd, Taylor, and Gilbert) to retaliate against Riddick on her behalf by denying out-of-cell activities, which they allegedly did. Finally, Riddick ropes in supervisors and grievance responders (McCowan, Fuller, and Collins), alleging that these officials furthered Hall's retaliation by failing to intervene to ensure Riddick received out-of-cell activities.

To succeed on any of his retaliation claims, Riddick must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (*Martin II*) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (*Martin I*)). But courts must consider an inmate's claim of retaliation by prison officials "with skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

The first element of the retaliation standard requires a showing that the plaintiff exercised his First Amendment rights. Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court, *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978), nor may they take actions that violate his "First Amendment right to be free from retaliation for filing a grievance." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

The second, adverse-action element of the retaliation standard is objective. Specifically, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely

deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). The plaintiff's continued exercise of his rights in the wake of the alleged retaliatory conduct "provides some evidence of the tendency of that conduct to chill First Amendment activity" or not, but the plaintiff's actions are "not dispositive" of this objective element of the analysis. *Id.*

The third element of the standard requires the plaintiff to show a causal connection between the triggering First Amendment activity and the alleged adverse action. A plaintiff must put forth evidence to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin II*, 977 F.3d at 300. "[T]emporal proximity" may be "enough to sufficiently make a prima facie showing of causation." *Williams v. Fairfax Cnty.*, No. 121CV598RDAIDD, 2022 WL 2346615, at *12 (E.D. Va. June 29, 2022).

At this point in the retaliation analysis, the burden of proof shifts to the defendant to show a "legitimate, nonretaliatory reason for taking adverse" action. *Id.* If the defendant does so, the plaintiff then regains the burden of proof and must show that the defendant's stated reason is merely a pretext for unlawful retaliation. *Id.* Where the evidence of a legitimate and nonretaliatory basis for the adverse action is undisputed, temporal proximity alone is insufficient to refute it. *Id.*

### 1. *Defendant Hall*

Considering the evidence in the light most favorable to Riddick, the court concludes that he has presented genuine issues of material fact on which he could persuade a jury that Hall filed a false disciplinary charge against him on July 25, 2020, to retaliate for his grievances

and threat of litigation, in violation of his First Amendment rights. Thus, he meets the first element of the *Martin* standard.

Riddick alleges that in response to his threat of litigation against Hall, she said she would "get" him and then placed a disciplinary charge against him for threatening bodily harm for saying he would "get her ass," a statement Riddick denies that he made. (Resp. pg. 6 [ECF No. 52].) An allegedly false disciplinary charge can satisfy the second, adverse action element of retaliation. *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014). In reliance on *Richardson v. Ray*, 492 F. App'x 395 (4th Cir. 2012), Hall argues that Riddick's claim of a false disciplinary charge fails because the hearing officer found him guilty of making a threat of bodily harm. But in *Richardson*, the plaintiff admitted that he had covered his window—the clearly unpermitted conduct for which he was disciplined. *Id.* at 396. In Riddick's case, the parties sharply dispute whether Riddick made the statement for which Hall charged him. That disputed fact precludes summary judgment on the second element of retaliation. *Booker*, 583 F. App'x at 44 (finding dispute over conduct charged was sufficient evidence that defendant's action "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

The same material dispute (whether Riddick made the threat for which Hall charged him) also precludes summary judgment on the causation element. Riddick alleges that Hall fabricated the threat and charged him to retaliate against him for grievances and a threat of litigation, while Hall contends that she charged Riddick because he threatened her and her staff. The court cannot resolve this factual dispute on summary judgment.

Moreover, Riddick also alleges that Hall retaliated against him for his exercise of constitutional rights by depriving him of out-of-cell activities. Because she, as a sergeant, made the list of inmates to participate in these activities, she also had the capability to intentionally deprive Riddick of them, whether out of retaliation or because he failed to follow procedures by being alert and responsive when Hall was making the participation list. It is undisputed that Riddick did receive some showers, some outside recreation, and some phone and kiosk usage during the three months following Hall's disciplinary charge against him. It is also undisputed that he had the capability to exercise and bathe in his cell and to contact his correspondents in other ways besides the telephone or email from the kiosk. Nevertheless, the court cannot conclude as a matter of law that causing Riddick to miss as many showers and recreation periods and kiosk usage as he claims he did during this time period (late July through September 2020) would *not* "deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500. The court will therefore deny summary judgment as to Riddick's retaliation claim against Hall.

For these reasons, the court will deny both summary judgment motions as to Riddick's claim that Hall brought a false charge against him to retaliate for his exercise of First Amendment rights.

## 2. Other Defendants

Riddick also contends that Hall furthered her retaliation against him by ordering four officers (Taylor, Mickles, Boyd, and Gilbert) to deny him out-of-cell activities. Riddick does not offer evidence contradicting testimony in the record that Hall had no authority to give such an order.

Moreover, the undisputed evidence establishes that, after the sergeant has made the list of inmates who requested showers or recreation, the floor officers only escort inmates who are on the list. Riddick says that many days after Hall brought the threat charge, no one woke him when the list was being made, so his name was not on the list, and these officers, pursuant to their established job duties, refused to escort him. Riddick does offer any facts that would establish that their failure to escort him to activities arose from a retaliatory motive based on his exercise of constitutional rights.

At bottom, the court finds that Riddick's allegations against these other officers are speculative and conclusory, lack any evidentiary support, and are legally insufficient to establish a *prima facie* retaliation claim. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (affirming summary dismissal of asserted retaliation claim that was unsupported by "any factual allegations"). Therefore, the court concludes that Taylor, Mickles, Boyd, and Gilbert are entitled to summary judgment as a matter of law and will therefore grant their motion as to Riddick's retaliation claims.

Similarly, Riddick does provide evidence showing that any of the supervisory defendants that he names to his retaliation claim (McCowan, Fuller, and Collins) acted because of a retaliatory motive. Rather, Riddick faults them for failing to investigate his complaints of being denied his out-of-cell activities, a claim that the court will address separately under the Eighth Amendment deliberate indifference standard. The court concludes, however, that Riddick's retaliation claims against these defendants are simply conclusory and unsupported by factual matter. *Id.* Therefore, the court will grant summary judgment for McCowan, Fuller, and Collins as to Riddick's retaliation claims.

**E. Deliberate Indifference to Conditions**

Riddick alleges that Hall denied him showers and recreation against his will, that she ordered Taylor, Mickles, Boyd, and Gilbert to do so, and that he advised McCowan, Fuller, and Collins as supervisors that their subordinates had denied him multiple showers and recreation periods over a three-month period. Riddick also contends that lack of these activities adversely affected his mental health. The defendants argue that Riddick fails to show a sufficiently serious deprivation related to these activities.

Failure to provide a long-term segregation inmate a "meaningful opportunity to shower and exercise because he was asleep when corrections officers took the shower and exercise list and was deemed to have refused the opportunities" can rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. *See Rivera v. Mathena*, 795 F. App'x 169, 173 (4th Cir. 2019) (finding that "Rivera did not intentionally refuse his showers and exercises while sleeping" through the list-taking procedure).

> The Eighth Amendment, which prohibits the infliction of cruel and unusual punishments, U.S. Const. amend. VIII, applies to claims by prisoners against corrections officials challenging conditions of confinement. In the prison context, it protects inmates from inhumane treatment and conditions while imprisoned. Further, "the conditions of solitary or segregated confinement must be measured against what the Supreme Court has termed the evolving standards of decency that mark the progress of a maturing society. To sustain an Eighth Amendment claim, a prisoner must show two things: 1) the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component), and 2) the prison official acted with a sufficiently culpable state of mind (subjective component).
>
> Under the objective prong, [the plaintiff] must demonstrate that the deprivation alleged [was], objectively, sufficiently serious. To be sufficiently serious, the deprivation must be extreme— meaning that it poses a serious or significant physical or

- 22 -

> emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.
>
> . . .
>
> Looking at the totality of the circumstances, including the duration of harm, is important in determining an Eighth Amendment violation. . . . For example, three days without showers might not violate the Eighth Amendment, whereas two months without showers and recreation can be sufficient to support an Eighth Amendment claim.
>
> . . .
>
> The second prong of an Eighth Amendment violation is the subjective prong. To demonstrate the subjective component, [the plaintiff] must show deliberate indifference, meaning the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety. Deliberate indifference is more than mere negligence, but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result. A plaintiff may satisfy this standard by prov[ing] by circumstantial evidence that a risk was so obvious that it had to have been known. [O]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted.

*Id.* at 174–76.

In *Rivera*, the court noted that whereas denial of showers and recreation against an inmate's will for a few days would not satisfy the objective component of an Eighth Amendment violation, being limited to two showers and exercise periods per week over several years would be objectively sufficiently serious. *Id.* at 174. In finding that Rivera's claims survived summary judgment on the objective component, the court also relied on his evidence that "he suffered emotional and mental deterioration, depression, low energy, difficulty sleeping, headaches, and loss of appetite."[7] *Id.* at 175.

---

[7] Like Riddick, Rivera raised a procedural due process claim regarding the denial of showers and recreation. The Fourth Circuit did not reach this issue, noting that he could "obtain the entirety of the relief that he seeks under his Eighth Amendment conditions of confinement claim." *Rivera*, 795 F. App'x at 177 n.6 (4th Cir. 2019).

Under the subjective component of the analysis, the court found Rivera had shown that some officials "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" posed by long-term denial of exercise and showers to long-term segregation inmates. *Id.* at 176. Evidence showed that Rivera (like Riddick) had notified staff verbally and through grievances that he was being denied showers and exercise against his will, and log sheets accessible to these officials recorded the number of such activity opportunities that officers had not provided to him. The court found a genuine issue of material fact as to whether the defendants received notice of Rivera's many missed many opportunities for showers and exercise and the impact on his physical and mental well-being. *Id.* at 176. When a risk of harm is so obvious that a fact finder could infer that certain officials must have known of it and responded unreasonably to it by allowing it to continue, the plaintiff has met the subjective component of the Eighth Amendment analysis. *Id.*

Riddick alleges that Hall was aware of, and in fact caused, officers' denying him numerous shower and recreation opportunities from July through September 2020. He also states that missing these sessions caused harm to his mental health. Logbooks show the number of recreation sessions and showers Riddick had missed, which could have served to put officials on notice of a potential risk of harm to him as a segregation inmate. Taking the evidence in the light most favorable to Riddick, the court finds that there is a genuine dispute of material fact as to whether Hall, as a sergeant, knew that by not placing Riddick on the shower and recreation lists, she was denying Riddick these out-of-cell activities against his will

---

As stated, Riddick's assertion of due process as an additional violation of his rights related to these activities is conclusory, and the court cannot construct this claim for him. For these reasons, the court will grant summary judgment on this due process claim as to all defendants without further discussion.

and that such denials could harm his mental health. A reasonable jury could also conclude that the floor officers who refused Riddick's requests for showers or recreation when he was not on the list also knew he was repeatedly being denied these activities. Similarly, a jury could also find that supervisory officials (Collins, Fuller, and McCowan) to whom Riddick allegedly complained about being denied showers and recreation multiple times failed to investigate and intervene, in deliberate indifference to a risk that Riddick's mental health would be adversely affected. Given the striking similarities between Riddick's allegations and the factual scenario in *Rivera*, the court will deny summary judgment on Riddick's deliberate indifference claims against the following defendants: Hall, Collins, Fuller, McCowan, Taylor, Boyd, Mickles, and Gilbert.

The court will grant summary judgment, however, for defendants Taylor, Mickles, Boyd, and Gilbert as to Riddick's Eighth Amendment claim that these officers made verbal threats against him. "The subjection of a prisoner to verbal abuse or profanity does not rise to the level of a constitutional deprivation."[8] *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C.), *aff'd*, 917 F.2d 1302 (4th Cir. 1990)).

## F. Denial of Telephone Calls

Riddick raises two claims about being denied phone calls in violation of his First Amendment rights. He alleges that Boyd, Taylor, Mickles, and Gilbert denied him calls during the three months after his encounter with Hall on July 25, 2020. He also alleges that Boyd

---

[8] In reaching this conclusion, the court notes that it does not condone such unprofessional conduct by corrections officers if it did occur.

denied him two phone calls in October 2020, including a call to Riddick's attorney. The court finds no merit to these claims.

Inmates do not have a *per se* right to use of a telephone. *See United States v. Alkire*, C/A No. 95-7885, 1996 WL 166400, at *1 (4th Cir. 1996) (unpublished) (finding "there is no constitutional or federal statutory right to use of a telephone while in prison."); *see also Thomas v. Drew*, 365 F. App'x 485, 488 (4th Cir. 2010) (unpublished) (finding no constitutional violation when inmate challenged "*de facto* ban" on telephone privileges). Similarly, inmates have no *per se* right to use of email while incarcerated. *Lumumba v. Blevins*, No. 7:20CV00599, 2022 WL 463105, at *3–4 (W.D. Va. Feb. 15, 2022) (finding that inmates do not have a constitutional right to email access, when other means for free expression and speech are available). Thus, the court concludes that Boyd, Taylor, Mickles, and Gilbert are entitled to summary judgment on Riddick's claims that, they occasionally denied him phone calls or use of the pod kiosk (related to inmate email devices) from July through September 2020, and that Boyd is entitled to summary judgment on Riddick's claim that he denied him a phone call on October 12, 2020.

The related claim that Boyd denied Riddick a call to his attorney on October 26, 2020, is liberally construed as a denial of access to adequate legal services and, consequently, denial of access the courts. It is well established that such a First Amendment claim must make specific allegations showing that the defendant's challenged conduct caused "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997). To satisfy the actual injury element, a prisoner must demonstrate that a "nonfrivolous" and "arguable" legal claim

was frustrated or impeded because of the defendant's action. *Lewis v. Casey*, 518 U.S. 343, 352-53 & n.3 (1996). Furthermore, the § 1983 complaint must contain a sufficient description of the allegedly frustrated claim to permit the court to assess whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Riddick fails to present any of the necessary factual detail to support a claim that Boyd denied him access to courts. Riddick does not provide a description of the legal claim he wished to discuss with his attorney *or* show that missing one opportunity to speak to the attorney by phone detrimentally affected his litigation of such a claim. The court concludes that Boyd is entitled to summary judgment as a matter of law on this claim.[9]

## IV. CONCLUSION

For the reasons stated, the court concludes that the defendants' motion to dismiss must be granted as to Riddick's due process claims against Collins, Fuller, Kiser, McCowan, Mullens, and Woods, related to disciplinary proceedings or grievance responses. The court also concludes that the defendants' motion for summary judgment must be denied in part and granted in part. This motion will be denied as to Riddick's claim that Hall brought a false charge against him in retaliation for his exercise of First Amendment rights and as to his claims of deliberate indifference against Hall, Kiser, Fuller, Collins, Taylor, Mickles, Boyd, and Gilbert related to denials of showers and recreation from late July through September 2020. These claims will proceed to a jury trial. As to all other claims, the defendants' motion for

---

[9] Riddick contends Boyd denied him the call to retaliate against him. Because the claim is insufficient on its face, the court sees no reason to delve into Boyd's alleged motives.

summary judgment will be granted. Riddick's motion for summary judgment (ECF Nos. 41, 52, and 53), which largely reiterate and rephrase the allegations of the complaint, will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 31st day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE